RAMÓN· MONTANER, AS MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Appellee, and ANTONIO R. MATOS ET AL., Petitioners before the Industrial Commission.

No. 37. Argued November 15, 1938.—Decided January 13, 1939.

*B. Fernández García, Attorney General, E. de Aldrey, Assistant Attorney General, Víctor J. Vidal González (Luis Negrón Fernández on the brief) for petitioner; M. León Parra, for appellee; Virgilio Brunet for petitioners before the Industrial Commission.*

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

The Manager of the State Insurance Fund raised the premium rate for the year 1937–38 to $5.85 from $3.98 in force during the year 1935–36 and 1936–37 for classification 0030 (cane plantations). Antonio R. Matos and other employers who considered themselves aggrieved by the increased

rate filed a petition for review in the Industrial Commission. The Manager of the State Fund appeared and filed a brief containing the allegations which he deemed to the point and, after several months during which the Commission heard on different occasions the arguments of counsel and the oral and documentary evidence of both parties, the Commission rendered a decision, on May 26, 1938, which reads as follows:

"For the foregoing reasons, we hold that the rate for classification 0030 must be lowered from $5.85 to $4.49 for the year 1937–38 for each $100 of payroll, and our ruling regarding the apportioning of the deficit when taxing the rates for 1938–39 should be taken into consideration; therefore we order the Manager of the State Insurance Fund to have such excess, computed from the time of the filing of the petition in the instant case, discounted from the premiums to be collected hereafter from the employers concerned, all in accordance with the provisions of subdivision 3 of section 24 of Act No. 45 approved April 18, 1935."

The Manager moved for a reconsideration of the aforesaid decision of May 26th, which was denied on the 13th of the following June, wherefore on the 28th of the same month he filed in this court, a petition for review consisting of 56 pages.

Appellant alleges that the proceedings had before the Industrial Commission are void *ab initio,* and that the same also applies to the decision appealed from for the following reasons:

"A. Because he was not given an opportunity to intervene in the proceeding, nor was he summoned or notified so that he might intervene; and because the Commissioner of Labor of Puerto Rico, who is an *ex officio* member of the Industrial Commission by virtue of Act No. 15 of April 14, 1931, entitled 'Organic Act of the Department of Labor of Puerto Rico', with the same rights and powers as the other members and with a greater interest and responsibility than the latter in the development of the Workmen's compensation service by virtue of the powers conferred and duties imposed upon him by the Organic Act of Puerto Rico, was neither summoned nor allowed to take part in the public hearings that were held.

"B. Because irrespective of and in addition to his right to intervene in the present case by virtue of the aforesaid Act, the intervention of the Commissioner of Labor was as necessary and indispensable in the instant case as in every other case where rates are revised, in order to insure the validity of the proceedings had before the Industrial Commission. Such proceedings are void, since by refusing to allow said officer to intervene, Act No. 45 of April 18, 1935, has been rendered unconstitutional in its application and operation, under which the Industrial Commission has been proceeding unlawfully in open violation of Sections 37 (last paragraph) and 18(*a*) of the Organic Act of Puerto Rico.

"C. Because Act No. 45 of April 18, 1935, is in itself unconstitutional insofar as it refers to the creation of the Industrial Commission as the same has been created in violation of Sections 37 (last paragraph) and 18(*a*) of the Organic Act of Puerto Rico; and in order to give validity to said Act it must be construed in connection with Act No. 15 of April 14, 1931, which makes the Commissioner of Labor of Puerto Rico an *ex-officio* member of said Industrial Commission."

It is further alleged that irrespective, of the three grounds above stated, the decision appealed from is also void on the following grounds:

"1. Because the Industrial Commission is not vested with authority to tax a premium rate, under the proceeding for review provided by Section 24 of Act No. 45 of April 18, 1935.

"2. Because even if it had such authority, which the appellant herein denies, the Industrial Commission, in reviewing the decision of the Manager taxing a premium rate for a classification in accordance with the proceeding for review provided by Section 24 of the aforesaid Act is bound to follow the statutory schedules established by law to be observed by the Manager in originally taxing said premium rate, and as the Industrial Commission has also disregarded and ignored said statutory schedules as well as the statutory provision to follow the decision of the Actuary in taxing a premium rate and has instead adopted its own decision in manifest conflict with the decisions and practice of the Actuary, illegally taxing at $4.49 the rate for classification 0030, it has acted arbitrarily, erroneously and without any legal basis for its action.

"3. Because even if it had such power, the rate of $4.49 taxed by the Industrial Commission is erroneous, illegal and void besides

being arbitrary, inasmuch as the same was taxed acting in excess of its jurisdiction.

"4. Because even if it had such power, the Industrial Commission acted unlawfully in taxing the premium rate for classification 0030 for the year 1937–38 at $3.98, which is the same that was applied in 1935–36 (plus $0.51 as surcharge of ½ of said year's deficit), without taking into consideration the expenses for said year 1935–36 as provided by law, which is erroneous since it creates the fund for the year 1937–38 on the basis of a new deficit in said classification.

"5. Because even if it had such power, such decision constitutes an encroachment upon the powers and authority conferred by Section 23 of the Act on the Manager of the State Insurance Fund regarding the annual revision by such office of the premium rates for the different classifications, and it seeks to control his action without authority and a priori, in the use of his discretion by imposing upon him in advance methods and rules for him to follow in regard to the technical work of computing said rates, and this is made applicable even to future rates, in an arbitrary, capricious and erroneous manner and in violation of law and establishing mistaken technical procedures without any legal authority, even determining and taxing in advance a premium rate for classification 0030 for the coming year 1938–39, all of which is in open violation of the law.

"6. Because even if it had such power, the Industrial Commission would have committed error in its decision, in absolutely disregarding the actuarial practice and reaching conclusions from mistaken premises, and likewise erroneously deciding the issue before it in a manner which shows its lack of understanding and mastery of the technical subject matter in controversy, decreeing without any legal or scientific ground a new deficit for classification 0030 for the year 1937–38, all of which is to the prejudice of the insurance fund, since its solvency and stability is at stake and its failure predetermined in an unlawful and arbitrary manner.

"7. Because the Industrial Commission has committed a serious error, moved by passion, prejudice and partiality, in weighing the evidence in this case, since there is no legal evidence whatever to warrant said decision, the evidence in the case being on the contrary, clearly against the decision rendered.

"8. Because as the Manager again revised the rate for classification 0030 and such rate was not challenged by the petitioners, the

Commission committed an error of law in not holding that the rate in force is $5.29 thus revised.

"9. Because the Industrial Commission committed an error of procedure in admitting evidence *aliunde* and distinct from that relied on by the Manager for the revision of rates made by said officer.

"10. Because the Industrial Commission committed error in admitting evidence and partly basing its decision on facts which ocurred after the date in which the rates were revised by the Manager of the State Fund all in violation of the proceeding for review established by law."

Section 11 of Act No. 45 of 1935 (Session Laws of 1935, pp. 250, 288) which confers jurisdiction on this court to review the decisions of the Industrial Commission, expressly provides that said review shall be limited to questions of law only.

The first three questions raised by appellant, marked A, B, and C, are unquestionably questions of law, and have already been clearly and definitely disposed of by this Court in *Rodríguez* v. *Industrial Commission*, 53 P.R.R. ——. We have nothing to add to what we said there.

Question marked No. 1 is purely a question of law, but those marked 2 to 10, inclusive, can be classified as both of fact and of law—of law in so far as as they challenge the decision of the Industrial Commission because it failed to comply with Sections 23 and 24 of the said Act, the former of which prescribing the procedure to be followed by the Manager in taxing the rates, and the latter prescribing the procedure to be followed by the Industrial Commission for reviewing the decisions of the Manager in taxing and revising the premium rates for each group of occupations or industries;—of fact, insofar as they challenge the conclusions reached by the Commission in weighing the evidence after following the procedure prescribed by law. As we have no jurisdiction to review questions of fact and as the first three questions A, B and C, have been disposed of by the case of *Rodríguez* v. *Industrial Commission*, supra, we will first

discuss the question marked No. 1, which refers to the author-ity of the Commission to lower rates and then proceed to determine whether the procedure prescribed by law for reviewing the decisions of the Manager has been followed.

■■■ In this case the Commission has reduced or lowered the premium rate fixed by the Manager for classification 0030 (sugar cane industry), and its authority to do so is clearly apparent from Section 24 of said Act which in its pertinent part reads as follows:

"Section 24.—The decisions of the Manager, fixing and regulat-ing the premium rates for each group of occupations or industries, and the rate classification to govern each group or industry in particular, or any order increasing the premium rate for a certain employer, as provided in the preceding Section, may be reviewed by the Industrial Commission of Puerto Rico in the following manner:

"1. The employer affected may file with the Industrial Commis-sion of Puerto Rico, at any time during the year in which the Manager's decisions are to be effective, a petition for review by said Commission of the decisions rendered by the Manager in regard to rates or premiums for one or more occupations or industries, giving the reasons why said rates or premiums should be amended; and the Manager shall be required to appear and answer said petition within a term of ten (10) days. The Commission shall give pre-ference to the case over all other cases on the calendar, and shall proceed to render a final decision in accordance with such rules as said Commission my have promulgated.

"2.    .    .    .    .    .    .    .    .    .    .

"3. In case the decision of the Commission is in the sense of reducing the rate or premium that the Manager has fixed for any class of occupation or industry, neither the Manager of the State Fund nor the Treasurer of Puerto Rico shall, in any case, be ordered to return the excess paid in premiums or taxes, but such excess, computed from the date of the filing of the petition, shall be deducted from the premiums or taxes to be collected in future from the employers filing the petitions.

"4. In case any classification is modified by an order or decree of the Commission, as herein provided, the Manager shall compute new rates, premiums or taxes in the manner determined by the Commis-

sion for all such employers as have workmen or employees within the challenged classification or classifications; Provided, that said rates, premiums, or taxes shall be computed from the date on which the petition for review was filed with the Commission and shall govern only to the end of the fiscal year to which said classification or classifications pertained.

"  .    .    .    .    .    .    .    .    .    .    ."

In hearing petitions for review the Industrial Commission is not, like the Supreme Court, confined to questions of law only. Subdivision 3 of section 24 provides (in Spanish) that: "En caso que la Comisión resuelva en el sentido de *rebajar la prima que el Administrador haya fijado . . .*", and the English version thereof reads as follows: "In case the decision of the Commission is in the sense of *reducing the rate or premium* that the Manager has fixed. . ." In subdivision 4 of the same section it is again stated (in Spanish): En el caso que se *modifique una clasificación por orden o decreto de la Comisión . . .*"; and its English version reads as follows: "In case any classification is *modified by an order or decree of the Commission . . .*"

It is the evident intention of the Legislature not to limit the Commission in its decisions to determine whether or not the computation of the rate or premium of a classification was erroneous, it being its duty, on the contrary, to reduce (*rebajar*) or to modify (*modificar*) once and for all the rate taxed by the Manager to that which in the opinion of the Commission it should be reduced. This should not be done arbitrarily by the Commission but after hearing and weighing the evidence and taking into account all the circumstances required by law. What practical end would be served if the Commission confined its action to ordering a reduction of the premium rate without stating the exact amount to which it should be lowered? How is it possible for the Manager to guess the rate which the Commission had in mind?

It is alleged by appellant that the Commission, in lowering the premium rate from $5.85 to $4.49 has acted capri-

ciously and arbitrarily, absolutely disregarding the actuarial practice, showing its lack of understanding and mastery of the technical issue, and decreeing without any legal or scientific basis a new deficit for the classification 0030, and that the Commission has committed a serious error in weighing the evidence moved by passion, prejudice and partiality.

Nothing can be more unjust. We have carefully read the stenographic record consisting of 830 pages and, if anything it shows a tried patience and a constant desire to do full justice. The Commission did not act either arbitrarily or capriciously. It heard all the evidence that the parties wished to present, it received documentary evidence from both parties and heard as witnesses the Manager of the State Insurance Fund himself, the Actuary of the State Insurance Fund, Mr. Santos Ramírez, who was the actuary who prepared the premium rates in force under the former law, and who recommended that the rate of $5.85 be adopted as the premium rate, and also Mr. González Quiñones, Secretary of the "Asociación de Agricultores".

It appears from the testimony of Mr. Montaner himself that subsequent to the filing of the petition for review in the Industrial Commission, the Manager agreed with other employers included in classification 0030, to lower the premium rate to $5.29, which, upon the advice of the Actuary, he had assessed at $5.85, and this reduction was made applicable to all employers within that classification, including petitioner. (Record, p. 567 *et seq.*)

Counsel for the Manager argued that because of the fact that the premium rate fixed at $5.85, which gave rise to the petition for review by the Industrial Commission, has been lowered, the appeal taken by Matos *et al*, should be dismissed, inasmuch as they complained of a premium rate which was no longer in existence, and that therefore the proper course was to file a new petition for review if they objected to the new premium rate of $5.29. The Commission correctly denied the petition of counsel for the State Fund

and proceeded with the case as though such reduction had never been made. If further appears from the testimony of. the Manager that during the fiscal year 1936–37 a saving was effected amounting to $80,000 in hospitalization expenses, which saving, according to the Manager, was reduced to $51,000 or $52,000 because of an increase in medical expenses (record, p. 538).

The following abnormal situation appears in connection with the hospitalization expenses. We copy from the Manager's testimony:

"Q. Have you also intervened in regard to these workmen remaining in the hospital?

"A. Well, I could not intervene in that because that is a medical question.

"Q. Did the doctor who accompanies you on these visits intervene?

"A. Yes, sir, he did.

"Q. With what results?

"A. Well, not only in the visits made by the Manager of the State Fund accompanied by medical inspectors or by any other doctor of the State Insurance Fund, but also in the visits regularly made by the medical inspectors alone or accompanied by other officials of the State Fund, they discharged workmen when they believed they should no longer be kept in the hospital.

"Q. Do you remember how many workmen were discharged in those visits during the fiscal year 1935–36?

"A. I do not remember exactly, but I know that in almost all the visits the medical inspectors discharged some workmen from the hospital.

"Q. Subsequent to the year 1935–36, or that is, during the year 1936–37, didn't you consider that situation in making the contracts?

"A. In what respect?

"Q. Did you or did not you consider the fact that certain clinics or hospitals kept workmen confined who should have been discharged?

"A. Well, we did not believe that those people were intentionally kept in the hospital, and rather thought it was merely a question of medical opinion. One doctor may think that a workman needs hospitalization, while another may say that he does not,

and most cases where this happened involved workmen with injured feet in which cases our medical examiner would be of the opinion that the workman could undertake the journey from the hospital to the ward where he lived, and the hospital doctor would be of the opinion that to discharge such man would result in an infection and naturally a dispute arises between the medical inspector and the attending physician.

"Q. So that no penalties have been applied to those clinics?

"A. No penalties whatever have been applied. We have simply intensified the inspection service as much as possible within the circumstances and taken into consideration the distance to be covered." (Record, pp. 398–400.)

The possible saving to be effected in hospitalization expenses was of course taken into consideration by the Commission in lowering the premium rate to $4.49.

Section 23 of the Act makes it the duty of the Manager to tax the lowest possible premium rates for each class of occupation or industry, including minimum rates consistent with the establishment of a solvent State Insurance Fund. Notwithstanding this, Mr. Bangert, who is the Actuary of the Fund, when explaining the reasons that lead him to recommend the increase in the premium rate, testified as follows:

"Without taking the payrolls into consideration, I had to advise the Manager of the State Insurance Fund to obtain more money so that the Fund should not operate with a deficit. In this manner the Manager could comply with his responsibility of maintaining a solvent State Fund." (Record, p. 705.)

So that, without taking the payrolls into consideration the item which represents the available income of the State Fund, the idea was to obtain more funds to enable the State Fund to function without a deficit. It is evident that in such circumstances a premium rate of $7 or $9 for each $100 of payroll might have been suggested, thus obtaining more funds for the State Fund. This practice, however, as we have seen, does not agree with the express provision of sec-

tion 23 which makes it the duty of the Manager to tax for each class of occupation or industry the lowest possible premium rates including minimum rates consistent with the establishment of a solvent State Fund.

The statement of the Actuary of the State Insurance Fund, who suggested $5.85 as a premium rate without taking the payrolls into consideration, and the action of the Manager in lowering *motu proprio* the premium rate from $5.85 to $5.29 in order to avoid the filing by the employers of petition for review from the decisions of the Industrial Commission, clearly shows that the premium rate of $5.85 was in excess of what was necessary to keep the State Fund solvent: as regards the Actuary, inasmuch as his statement shows a complete disregard of the interest of the employers as well as for the express provisions of Section 23 of the Act, which only authorizes the lowest possible rates consistent with the solvency of the State Fund; as regards the Manager, because if the rate of $5.85 was taxed as should be presumed on the bases of calculation in compliance with the provisions of Section 23 supra, it is inconceivable that such rate could so easily be lowered from $5.85 to $5.29, without endangering the solvency of the Fund, since it is logical to presume that the Manager will not knowingly tax an insufficient rate.

As appears from the record, the Commission, when lowering the rate to $4.49, took into account any possible saving and considered besides the fact that the clear purpose of the Act was not to obtain from the employers the largest possible amount of funds but to follow the standard set by Section 23 of the Act. From an estimate of the deficit to be covered, it considered that the rate of $4.49 was reasonable and in so lowering it, it did not act arbitrarily or capriciously but after first hearing and weighing not only the evidence offered by the Manager of the State Fund but also that of the employers, including the testimony of the Actuary Mr. Ramírez.

In our opinion but a single error was committed by the Industrial Commission in its decision, by ruling that its apportioning of the deficit be taken into account for the year 1938–39. Such pronouncement is erroneous because the Commission cannot fix in advance rules to be followed by the Manager in future years. It devolves upon the Manager to tax the premium rates for each year (section 23) and upon the Commission to lower or modify them unless they are the lowest possible rates consistent with the solvency of the State Fund (section 24).

For the foregoing reasons, the decision of the Industrial Commission of Puerto Rico should be modified so as to exclude therefrom the pronouncement whereby the Manager is directed to take into account the apportioning of the deficit for the fiscal year 1938–39 which was not subject to review, and as modified, affirmed.